

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

NOV - 6 2013

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RODNEY B. ALLEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:13-CV-619-A |
| | § | |
| BUTCH TUBERRA, M.D., C.D., | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION
### and
### ORDER

Now before the court is the above-captioned action wherein
Rodney B. Allen is plaintiff and defendants are: Butch Tuberra,
M.D., C.D. ("Tuberra"); Willie Feliciano ("Feliciano"); Hulen
Imaging Center; Radiology Associates; Jose Gomez ("Gomez");
Kenneth Russell, M.D. ("Russell"); (no first name) Schmidt, Food
Administrator; (no first name) Byther, food service secretary;
(no first name) Robinson, food service officer; (no first name)
Riley, safety; (no first name) Adams, safety; Lt. M. Merk
("Merk"); Lt. Cristie ("Christie"); Lt. Odom ("Odom"); (no first
name) Sanchez, Bureau of Prisons officer; (no first name) Woods,
Bureau of Prisons officer; Captain Bengford ("Bengford"); Rebecca
Tamez ("Tamez"), Warden, FCI-Fort Worth; (no first name) McKinny,
administrative coordinator; Lt. Coleman ("Coleman"), SIS
lieutenant; (no first name) Jakes, union president; (no first

name) Wilson, Dallas Unit manager; (no first name) Crownover,
Dallas Unit counselor; (no first name) Mooney, Dallas Unit Case
Manager; Richard Lovings ("Lovings"), Houston Unit counselor; (no
first name) Goeble, chaplain; (no first name) Jones, Bureau of
Prisons officer; Danny Marerro ("Marerro"), mid-level provider;
(no first name) Ferguson, health service administrator; Teresa
Burns ("Burns"), registered nurse; (no first name) Harvey, Bureau
of Prisons officer; FCI Texarkana; J. Seely ("Seely"), Bureau of
Prisons Officer; and United States of America.

I.

## The Complaint

Most of the allegations in the complaint arise from, or
relate to, an incident that occurred on October 2, 2010. On that
date, plaintiff slipped and fell on a wet floor while working in
the prison's food service area. Plaintiff claims he dislocated
his left hip and thigh bone, twisted his left knee, and injured
his lower back. According to the medical records attached to the
complaint, plaintiff was examined in the health services clinic
on October 2, 2010, the same day he fell. Medical staff gave
plaintiff medication and crutches, ordered x-rays of his hip and
knee, and directed plaintiff to rest for three days.

Plaintiff was seen again in the health services clinic on
October 8, 2010. The medical records from that day indicate that

2

plaintiff sat and stood unassisted, was not using the crutches for support, and noted that the x-ray of plaintiff's hip and knee was normal.  Plaintiff returned to the clinic on October 28, 2010, and December 10, 2010, for additional follow-up. Additional treatments were ordered and noted during those examinations.  For example, the medical records for December 10, 2010, indicate another follow-up examination was scheduled for December 22, 2010, along with additional x-rays of the affected areas and physical therapy.

Plaintiff returned to the clinic for follow-up on February 18, 2011.  At that time additional pain medication was prescribed and an MRI was ordered.  An MRI of plaintiff's back was performed on April 22, 2011.  Plaintiff was examined by a neurologist in June 2011.  The physician recommended an MRI of plaintiff's left hip, which was conducted on September 15, 2011.  The MRI was negative.

Plaintiff returned to the health services clinic in September and October of 2011, and again in January, March, and April of 2012.  During each examination, additional tests or medications were ordered.

Plaintiff also complains that on September 2, 2011, Wilson and Crownover tried to force him to share a cell with another inmate, who he did not know, but by whom plaintiff claimed he

felt threatened.   Plaintiff contends that in trying to get him to move into the cell, Merk slammed him against a wall.

Plaintiff asserted claims against United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, and against individual defendants pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971).[1]

II.

<u>Screening Pursuant to 28 U.S.C. § 1915A</u>

At the time he filed the complaint, plaintiff was incarcerated at the Federal Correctional Institution in Florence, Colorado, while the events described in the complaint occurred while he was incarcerated at FCI-Fort Worth.   As a prisoner seeking redress from government officials, plaintiff's complaint is subject to preliminary screening under 28 U.S.C. § 1915A, regardless of whether he paid the full filing fee or is proceeding <u>in forma pauperis</u>.   <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998).   Section 1915A(b)(1) provides for <u>sua sponte</u> dismissal if the court finds that the complaint is either frivolous or fails to state a claim upon which relief may be granted.   A claim

---

[1]Hulen Imaging Center and Radiology Associates, as private companies, would have no liability under either the FTCA or in a <u>Bivens</u> action.  Inasmuch as plaintiff has failed to allege any claim for relief against those defendants under any possible theory, the court need not address that issue. Similarly, United States is the only proper defendant in an FTCA action, and a <u>Bivens</u> claim may only be asserted against an individual federal employee or officer.  Accordingly, FCI Texarkana is not a proper defendant to this action.

4

is frivolous if it "lacks an arguable basis in either fact or

law." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).  A

complaint fails to state a claim upon which relief can be granted

when, assuming that all the allegations in the complaint are true

even if doubtful in fact, such allegations fail to raise a right

to relief above the speculative level.  <u>Bell Atl. Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks and

citations omitted).  After a thorough review of the complaint, as

well as the voluminous exhibits attached thereto, the court is

satisfied that plaintiff's claims, other than the claim of

assault, should be dismissed, and that plaintiff should be

required to file an amended complaint as to the assault claim.

III.

<u>Analysis</u>

A.   <u>Dismissal of Certain Defendants</u>

   1.   <u>Defendants Not Mentioned in the Body of the Complaint</u>

   Robinson, Harvey, and Seely are named as defendants;

however, they are never mentioned in the body of the complaint.

No claim is stated against them, and they are dismissed.

   2.   <u>Defendants Against Whom No Facts are Alleged Or</u>
        <u>Against Whom Plaintiff Failed to State A Claim</u>

   Hulen Imaging Center, Radiology Associates, Russell,

Schmidt, Byther, Riley, Adams, Jakes, Crownover, Mooney, Lovings,

5

Goeble, Jones, Marerro, Ferguson, Burns, Gomez, Cristie, Odom, Sanchez, Woods, Bengford, McKinny, Wilson, and FCI-Texarkana are all mentioned in passing in the complaint.  Many are mentioned only one time in all twenty-eight pages; some are mentioned a few times with respect to descriptions of events that occurred at FCI-Fort Worth.  However, no facts are alleged as to any of these defendants as would state any claim against them.  Each of these defendants is dismissed.

    3.  <u>Supervisory Defendants</u>

As to Tamez and Coleman, plaintiff alleges only that: he reported misconduct by other staff members to them, but they failed to investigate; he wrote a letter to Tamez for assistance with his medical issues, which resulted in the scheduling of another MRI consult; and Tamez and Coleman "aquiesced to their subordinate's wrong doing, and tacitly approved of such conduct." Compl. at 24 (errors in original).  It thus appears plaintiff is attempting to sue Tamez and Coleman solely in their supervisory capacities.

Because there is no doctrine of <u>respondeat superior</u> under <u>Bivens</u>, supervisors cannot be liable solely on that basis.  <u>Cronn v. Buffington</u>, 150 F.3d 538, 544 (5th Cir. 1998).  Instead, liability attaches only when the supervisory official is personally involved in the acts causing the alleged

constitutional violation, or if he or she "implements a policy so deficient that the policy itself acts as a deprivation of constitutional rights." Id.

Here, plaintiff has failed to allege any facts as would establish Bivens liability as to either Tamez or Coleman. There are no factual allegations that either individual was personally involved in any conduct that violated plaintiff's constitutional rights, nor are facts alleged to show that Tamez or Coleman implemented a policy that itself resulted in a constitutional violation. Absent the required factual allegations, plaintiff has failed to state any claim for relief against Tamez and Coleman, and any claims against them are dismissed.

B.   Lack of Adequate Medical Care

A significant portion of the complaint focuses on the alleged failure of Tuberra and Feliciano to provide adequate medical care following plaintiff's fall on October 2, 2010. Plaintiff repeatedly complains that Tuberra and Feliciano denied him proper medical treatment and repeatedly states that Tuberra, Feliciano, and others used his injuries to "torture" him. See e.g., Compl. at 5-7,10, 12-13, 15. Despite this inflammatory language, however, the complaint and the papers attached thereto conclusively show that plaintiff is entitled to no relief on this claim.

7

The "unnecessary and wanton infliction of pain . . .

constitutes cruel and unusual punishment forbidden by the Eighth

Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (ellipses

in original)(internal citation and quotation marks omitted).  The

Supreme Court has determined that deliberate indifference to a

prisoner's serious medical needs may constitute the "unnecessary

and wanton infliction of pain" necessary to state an Eighth

Amendment violation. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

However, not every claim by a prisoner that he received

inadequate medical care states an Eighth Amendment violation.

Id. at 104-105.

For a prison official's deliberate indifference to a

prisoner's serious medical needs to rise to the level of a

constitutional violation, a prisoner must establish that the

official knew of and disregarded an excessive risk to a

prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825,

837 (1994).  "[T]he official must both be aware of facts from

which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." Id.

An official's "failure to alleviate a significant risk that he

should have perceived but did not" does not constitute an Eighth

Amendment violation.  Id. at 838.  Unsuccessful medical care,

negligent treatment, or medical malpractice do not rise to the

level of a constitutional tort. Gobert v. Caldwell, 463 F.3d
339, 346 (5th Cir. 2006). Disagreement between a prisoner and
his doctor regarding the course of treatment is generally not
actionable. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir.
1995) (per curiam). "Medical records of sick calls,
examinations, diagnoses, and medications may rebut an inmate's
allegations of deliberate indifference." Id. "Deliberate
indifference is an extremely high standard to meet." Gobert, 463
F.3d at 346 (internal quotation marks and citation omitted).

The court concludes in the instant action that plaintiff has
failed to allege a claim of deliberate indifference to his
medical needs or inadequate medical care. Although plaintiff
repeatedly alleges that Tuberra and Feliciano failed to provide
him adequate medical care, elsewhere in the complaint he
describes at length the numerous physical examination he received
by Tuberra, as well the MRI and neurological examinations he
received and medications prescribed for him.

In addition, the medical records attached to the complaint
document the opposite of inadequate medical care. The records,
and a number of allegations in the complaint, show that plaintiff
was examined in the prison medical clinic on the day of his
injury, and received a continuing course of treatment for his
injury and physical complaints arising from that injury,

beginning on the date of injury and continuing through at least
April of 2012.  During that time, plaintiff was regularly
examined at the prison's health services clinic, given
prescription pain medication, and sent for additional
examinations and procedures at non-prison facilities with non-
prison physicians.  Plaintiff may have disagreed, or been
dissatisfied, with the treatment he received, or he may have
believed that different or additional treatment should have been
provided.  However, a physician's decision about whether to
provide different or additional treatment "is a classic example
of a matter for medical judgment." Estelle, 429 U.S. at 107.
Mere disagreement with medical treatment provided is insufficient
to state a claim for deliberate indifference to a prisoner's
medical needs.  Gobert, 463 F.3d at 346.

      Plaintiff also complains that, during the course of a
follow-up examination on December 10, 2010, Tuberra intentionally
"tortured" him in the way Tuberra examined him to check
plaintiff's muscle reflexes.  Although plaintiff takes issue with
the manner in which he claims Tuberra conducted the examination,
again, disagreement with the manner or type of treatment provided
is insufficient to state a claim for deliberate indifference to a
prisoner's medical needs.  A prisoner is not entitled to the best
care money can buy.  Mayweather v. Foti, 958 F.2d 91, 91 (5th

Cir. 1992).  To the extent plaintiff is attempting to claim

Tuberra was negligent or committed malpractice during the

examination, such is insufficient to state a claim of deliberate

indifference.  Gobert, 463 F.3d at 346.  Accordingly, Tuberra and

Feliciano are dismissed; to the extent plaintiff intended to

assert a claim against United States under the FTCA related to

alleged lack of medical care, that claim is dismissed as well.

C.   Retaliation and Conspiracy

The complaint contains no specific heading, claim, or cause

of action labeled "retaliation" or "conspiracy."  Rather, in

various places throughout the complaint plaintiff asserts that

certain defendants retaliated or conspired against him.

In order to prove retaliation, plaintiff must allege: a

specific constitutional right; the defendant's intention to

retaliate against him for the exercise of that right; a

retaliatory adverse act; and, causation, that is, he must show

that the incident would not have occurred but for a retaliatory

motive.  Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.

1999); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  Mere

conclusory allegations of retaliation are insufficient, and

plaintiff must allege more than his personal belief that he has

been the victim of retaliation.  Jones, 188 F.3d at 325.

Conclusory allegations and a personal belief of retaliation

11

are all that plaintiff has alleged in the instant action.  For example, plaintiff alleges that Marerro "retaliated against me and denied me proper medical treatment" and that Marerro "made threats towards me, and attempted to throw me out of the Hospital."  Compl. at 22.  This is the only mention of Marerro in the complaint, and no facts are alleged to support these assertions.  No mention is made of plaintiff exercising a constitutional right of which Marerro was aware, nor are facts alleged showing that Marerro intended to retaliate against plaintiff for exercising that right or that show causation.

Similarly, plaintiff alleged that Ferguson "retaliated against [him] by denying [him] proper medical assistance, and proper medical treatment."  Compl. at 22-23.  Again, no facts whatsoever are alleged to show that Ferguson did anything pertaining to plaintiff.  The foregoing quote is the only time Ferguson is mentioned in the complaint.  The remaining assertions of retaliation in the complaint are equally conclusory, fail to allege that plaintiff was exercising any constitutional right, the exercise of which caused a defendant to retaliate against him, and fail to allege that some incident would not have happened but for the defendant's retaliatory motive. Accordingly, to the extent plaintiff is intending to assert any claims of retaliation, such claims fail.

Plaintiff makes similar conclusory assertions that some of the defendants conspired against him.  To allege a claim of conspiracy, plaintiff must plead specific facts showing that the defendants agreed to commit an illegal act which resulted in an injury to him.  Arsenaux v. Roberts, 726 F.2d 1022, 1024 (5th Cir. 1982).  As with plaintiff's other claims, conclusory assertions are insufficient to state such a claim.  Hale v. Harney, 786 F.2d 688, 690 (5th Cir. 1986).  Absent from the complaint, however, are any facts showing any agreement among the defendants to do anything that injured plaintiff.

For example, plaintiff alleges that Tuberra and Feliciano

are conspiring with Mr. Schmidt (Food Administrator), Mrs. Byther (Food Service Secretary), Mr. Riley (Safety), and Mr. Adams (Safety).  I'm being denied the right to medical assistance, and medical treatment, because the defendant, BUTCH TUBERRA, M.D., C.D., and WILLIE FELICIANO, choose to conspire with Mer. Schmidt, and his co-conspirators, to mislead investigators, by covering up my injuries.

Compl. at 8 (paragraph numbers omitted) (errors in original). The complaint contains no facts to support these assertions.

Elsewhere, plaintiff alleges that Russell, a physician, "works at FCI Fort Worth" and "is conspiring with the staff at FCI Fort Worth, and is depriving me of proper medical care, as well as conspiring to mislead investigators."  Compl. at 20. Again, no facts are alleged describing anything Russell did with

13

respect to plaintiff; indeed, the above-cited passage is the only
place Russell's name is mentioned in the complaint.   To whatever
extent plaintiff is intending to allege conspiracy claims, such
claims are dismissed.

D.   Assault

Many of the allegations under the heading of "assault" in
the complaint pertain to Bureau of Prisons's officials attempts
to move plaintiff into a cell with another inmate, which
plaintiff persistently refused.   As a result of plaintiff's
refusal on multiple occasions to accept a cellmate, multiple
disciplinary actions were initiated against plaintiff that
resulted in sanctions, including loss of good conduct time.

The only allegation in the complaint that pertains to an
"assault" is that on one of the occasions after plaintiff had
refused to move into a cell with another inmate or otherwise
accept a cellmate, Merk and other officers escorted plaintiff to
administrative detention.   When plaintiff again refused to enter
a cell with another inmate, Merk "slammed [plaintiff] into the
wall."   Compl. at 10.   Included among the papers submitted with
the complaint, however, is a letter dated October 19, 2011,
addressed to Tamez and signed by plaintiff, that states in
pertinent part, "I was not assaulted by Lt. Merk."

The court concludes that plaintiff should be allowed to

14

proceed on his assault claim.  However, plaintiff must file an amended complaint as to only that claim.  In the amended complaint, plaintiff must also explain the circumstances surrounding the October 19, 2011 letter wherein he disclaimed any assault by Merk.

Additionally, exhaustion of administrative remedies is required prior to filing a claim under either <u>Bivens</u> or the FTCA. While plaintiff provided papers showing he had filed an FTCA claim related to his complaint of lack of medical care, it is unclear if he pursued administrative remedies related to his claim of assault.  In the amended complaint, plaintiff must explain how he has exhausted administrative remedies as to his <u>Bivens</u> claim against Merk for assault, and attach to the amended complain documentation showing such exhaustion.  If plaintiff is also directing his assault claim to United States under the FTCA, he must demonstrate exhaustion of that claim as well.

E.    <u>Other Allegations in the Complaint Do Not State a Claim Upon Which Relief May be Granted</u>

Much of the complaint appears to be a rambling description of things that happened to plaintiff while he was incarcerated at FCI-Fort Worth which were not to plaintiff's liking.  For example, plaintiff complains that when he was transferred from FCI-Fort Worth in December 2011 he was "forced to get on the bus

alone, without any assistance [from] the medical staff, or staff members." Compl. at 20. Such does not allege a violation of any constitutional right, nor does plaintiff allege even the slightest harm resulting from this incident.

Likewise, under the heading "Violations Alleged," plaintiff alleges "racial discrimination, conspiracy to commit fraud, and conspiracy to mislead investigators." Id. at 24. No facts can be found in the complaint as would support any such claims against any of the defendants, and the court is not considering those to be valid claims.

## IV.

### Order

Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiff, Rodney B. Allen, against defendants Tuberra, Feliciano, Hulen Imaging Center, Radiology Associates, Gomez, Russell, Schmidt, Byther, Robinson, Riley, Adams, Christie, Odom, Sanchez, Woods, Bengford, Tamez, McKinny, Coleman, Jakes, Wilson, Crownover, Mooney, Lovings, Goeble, Jones, Marerro, Ferguson, Burns, Harvey, FCI Texarkana, and Seely be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such

16

dismissals.

The court further ORDERS that by December 4, 2013, plaintiff file an amended complaint that: (1) includes allegations pertaining solely to the assault claim by Merk; (2) explains the meaning of the October 19, 2011 letter denying any assault by Merk; (3) describes how plaintiff has exhausted administrative remedies under Bivens and the FTCA as to his assault claim; and, (4) has attached as exhibits documentation showing such exhaustion.

The court further ORDERS that failure of plaintiff to comply with the requirements of this order may result in the imposition of sanctions, including dismissal of this action, without further notice.

SIGNED November 6, 2013.

_____
JOHN McBRYDE
United States District Judge